# Buckley v. Cunningham *et al.*

*Action by Tenant against Landlord to recover Damages resulting from the bursting of a Water Pipe.*

1. *Liability of landlord for bursting of water pipe.*—Where the lower rooms of a building are rented, and in the room above them, which was unoccupied, and under the exclusive control of the landlord, a water pipe, which passed through the rented rooms and could be seen by ordinary observation, and was known to be there by the occupants of said rooms, bursted by reason of a freeze, and water leaked through the floor and damaged the goods of the tenants in the lower rooms, the landlord is not liable for such damage on account of his failure to have the water cut off, when there is no evidence that the water pipe was defective, or that it was not put up in a proper manner, or that the tenants requested the landlord to have the water cut off; it being, under such circumstances, equally the duty of the tenants themselves to have the water cut off.

2. *Same; not liable for failure to provide a shut-off for a water pipe.*— In such a case the landlord is not liable to his tenant for failing "to provide a shut-off for said water pipe," in addition to the stop-cock near the curb-stone furnished by the city, as provided by a rule of the water company, there being no evidence that such failure contributed proximately to the damage complained of; the landlord having the right to construct his building, either with or without

29

[Buckley v. Cunningham *et al.*]

water pipes and other conveniences, according to his own preferences, and in renting said building without such shut-off or stop or waste cock, the tenant assumed the risk incident to its condition.

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

The appellees, Cunningham & Aderholdt, brought the present action against M. L. Buckley, to recover damages for injury to a stock of goods, which was caused by the bursting of a water pipe in a room over the storeroom of the plaintiffs, which had been rented from the defendant.

The facts of the case are sufficiently stated in the opinion. The cause was tried without the intervention of a jury, upon the pleas of the general issue and contributory negligence; and the court, after hearing all the evidence in the case, rendered judgment in favor of the plaintiffs. The defendant brings this appeal, and assigns as error the judgment thus rendered.

GOODHUE & SIBERT, for appellant, cited 1 Taylor on Landlord & Tenant, §. 199; 2 Wood's Landlord & Tenant, p. 847, § 381; *Greene v. Hague*, 10 Ill. App. 598; *Mendel v. Fink*, 8 Ill. App. 378; *Stapenhorst v. Amer. Man'fg. Co.*, 15 Abb. Pr. N. S. 355.

BILBRO & BURNETT, *contra.*—1. This action is for the negligence of the landlord resulting in damages to his tenants. The law makes him liable for injuries flowing from defective construction of building, and for failing to keep the plumbing in proper repair, and for failing to manage and control properly plumbing appliances.— 12 Amer. & Eng. Encyc. of Law, 687 and notes; *Jones' Case*, 66 Ga. 505; 2 Sherman & Redf. on Neg., §§ 14, 722; 2 Wood's Land. & Ten., (2d. Ed.), 1293 *et seq.* and notes; *Tonsy v. Roberts*, 11 Amer. St. Rep. 655.

2. The use and control of the upper story and the water pipe were with appellant alone. He is, therefore, responsible for any damage flowing from them arising by his negligence.—*Shipley v. Fifty Associates*, 101 Mass. 251; *Mendel v. Fink*, 8 Brad. Rep. (Ill.) 378; *Greene v. Hague*, 10 Brad. Rep. 598; *Looney v. McLean*, 129 Mass. 33.

COLEMAN, J.—The plaintiffs, Cunningham and Ader-

holdt, rented from Buckley the lower rooms of a building, in which they carried on a millinery business. There was a water pipe leading from the main of the water works of the city of Attalla, under ground to the rear of the building, and up through the room rented by plaintiffs to an upper room overhead by means of which water was conducted to the upper story. On account of a freeze the pipe bursted in the upper room and the water escaping therefrom leaked through upon the goods of the plaintiff in the room underneath and injured them. The upper room was unoccupied and was under the exclusive control of the landlord, Buckley. The precise negligence averred in the first count of the complaint is "that the defendant negligently failed to cut the water off from said upper story," &c. The negligence averred in the second count is, "that the defendant negligently failed to provide a shut-off for said water pipe, so that the water in said pipe could be shut off," &c. The case was tried by the court without the intervention of a jury, upon the plea of the general issue and contributory negligence, and the trial resulted in a judgment for the plaintiffs.

The relation of landlord and tenant, that the water was not cut off, the bursting of the pipe from freezing in the upper room, the running of the water through the floor, and damage to the goods, were fully proven. There was no evidence that the pipe itself was defective, or that it was not put up in a proper manner. There was no cut-off to the pipe except the city stop-cock in front of the building. Rule V, established by the board of commissioners of the water works, provided that "in addition to the stop-cock near the curbstone furnished by the city, each attachment, at the expense of the consumer, must be provided with a stop and waste cock conveniently placed inside the premises under the control of the occupant, to be used in case of leakage of the pipe or fixtures, or for making repairs and to prevent freezing." There was no stop or waste cock attached, as provided in the foregoing rule. It was also in evidence, without conflict, that one Prickett "was employed by the water works to turn on and shut off water," "that it was his duty to cut off the water when parties requested it." It was also in evidence that plaintiffs were not informed when they rented the lower room, that a water pipe passed up through it, but this information was

[Buckley v. Cunningham *et al.*]

not intentionally withheld, and the pipe was open to be seen by ordinary examination, and its existence and position was in fact known to plaintiffs several days before the damage. Plaintiffs never requested either the landlord or Prickett to cut off the water. One of the plaintiffs testified that ''she supposed the water had been turned off, and had no idea there was any water in the pipe.'' From these facts the court declared, as matter of law, that the landlord was liable. Our opinion is, that, under the evidence, the plaintiffs had as much authority over the city stop-cock as the defendant, and the defendant owed them no duty to see that the water was cut off, at least until notified and requested to do so. The testimony is full, that it was the duty of Prickett ''to cut off the water when parties requested it.'' Plaintiffs were themselves negligent in merely ''supposing the water had been turned off.'' It was their duty to know, and it was within their power, and was their privilege, to have guarded against the cause of damage. It follows that the plaintiffs were not entitled to recover under their first count.

The second count charges that ''the defendant negligently failed to provide a shut-off for said water pipe, so that the water in said pipe could be shut off.'' If it be conceded that the defendant was negligent in the matter alleged, there is no evidence to show that it proximately contributed to the damage. Plaintiffs made no complaint on this account, made no attempt to cut the water off, made no request to have it done. There was a city shut-off convenient to plaintiffs, and, according to the evidence, there was an employé whose ''duty it was to cut off the water when requested.'' Moreover, we are of opinion that every man has a perfect right in the matter of water pipes or other conveniences to construct his own buildings, according to his own preferences, either with or without them. There being no latent defects, or fraud or concealment, a tenant takes a building as it is, regulating the price according to the value, increased or diminished by its condition and conveniences. If the building or room has a water pipe through it, and there is no stop or waste cock, the tenant knows it when he rents the building, fixes its rental value accordingly, and, unless it is provided otherwise by contract, he assumes the risk incident to its condition.—*Jaffe v. Harteau,*

Vol. 103.

56 N. Y. 398, 15 Amer. Rep. 438; *Cowen v. Sunderland,* 145 Mass. 363, 1 Amer. St. Rep. 469; *Doupe v. Genin,* 6 Amer. Rep. 47; *Gill v. Middleston,* 7 Ib. 548; *Davidson v. Fitcher,* 11 Col. 583, 7 Amer. St. Rep. 267; *McCarthy v. Bank,* 74 Me. 315, 43 Amer. Rep. 591.

We fully realize the maxim *"sic utere tuo ut alienum non laedas,"* when this rule applies, and also the liability of an upper tenant, or a landlord who controls an upper story, for all damages sustained by one occupying an under story or room, caused by any culpable negligence of such landlord or upper tenant. The fact that the landlord controlled the upper room in which the pipe bursted, adds nothing to his responsibility in this case. If the upper room had been occupied by a tenant with absolute control to the exclusion of the landlord, such tenant, under the evidence, would not be liable for the damage; neither would the liability of the landlord by reason of such tenancy be lessened. There was no defect in the pipe, and there was no neglect of duty pertaining to the upper story, where the break occurred. The neglect, if any, was in not shutting off the water, if a duty, one the landlord owed to the occupants of the lower rooms as much as to an occupant of the upper room. The cases of *Jones v. Freidenberg,* 66 Ga. 505, 42 Amer. Rep. and *Rosenfield v. Arral,* 44 Minn. 395, 20 Amer. St. Rep. 584, and others of like import do not apply. Here the liability, if it exists, lies behind—farther back than—the occupancy or control of the upper story; it is in the negligent failure to cut off the water from the pipes, a duty owing to plaintiffs, if it be such, without reference to the ownership or occupancy of the upper story.

To declare as matter of law, growing out of the relationship of landlord and tenant, independent of contractual obligation, that the landlord owed a duty to his tenants, in anticipation of a freeze, to see, for the protection of his tenants, that the water was cut off from the pipes, when the facts show, that the tenants have equal authority and privilege to shut the water off, or cause it to be shut off at their request, as the landlord, would be to lay down a rule of law, unwarranted by any just principle, or any precedent which we have discovered. Under the evidence the verdict should have been for the defendant. A judgment will be here rendered to that effect.

Reversed and rendered.